UNITED STATES DISTRICT COURT,
FOR THE WESTERN DIVISION OF MASSACHUSETTS

C.A. No. _____

05 - 3 0 0 5 7 - MAP

PAUL MARTIN AND JOANN MARTIN,
     Plaintiffs,

v.

INDIAN HARBOR INSURANCE
COMPANY,
     Defendant

**FILING FEE PAID:**
RECEIPT # 305869
AMOUNT $ 250.00
BY DPTY CLK lh/sk
DATE 2/23/05

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Paul Martin and Joann Martin, for their Complaint and Demand for Jury Trial against Defendant Indian Harbor Insurance Company ("Indian Harbor"), state as follows:

### Jurisdiction

1. Plaintiffs Paul Martin and Joann Martin are residents of Southampton, Hampshire County, Massachusetts.

2. The Defendant, Indian Harbor, is a foreign insurance corporation with a principal place of business in Stamford, Connecticut.

3. There is complete diversity of citizenship among the parties, and this Court has jurisdiction of this matter pursuant to 28 USC §. 1332. The amount in controversy exceeds $75,000.

### Facts

4. On March 5, 2004, Plaintiffs applied for insurance with the Defendant to cover damage to a building caused by fire and other casualties at premises in Westfield known

as the Maple Leaf Inn. The structure consisted of two stories: a business on the first floor, and eight residential rental units on the second.

5. Plaintiffs utilized the services of their own experienced broker. That broker, using methodology recognized and accepted in the insurance industry, determined and recommended to the Plaintiffs that the proper amount of replacement value coverage on the insured building was $550,000. Plaintiffs requested coverage in that amount.

6. The policy coverage was effective April 1, 2004 (the "Policy"). The premium for the policy was Five thousand two-hundred and thirteen dollars ($5,213.00).

7. The Policy contained a coinsurance clause, which required the building to be insured to 90% of its replacement value.

8. The Policy specifically provided:

   1. **Coinsurance**

      If a Coinsurance percentage is shown in the Declarations, the following condition applies.

      a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

         Instead, we will determine the most we will pay using the following steps:

         (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

         (2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

         (3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

         (4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

(Policy at p. 11 of 14).

9. Accordingly, on the basis of the $550,000 coverage sought, as long as the actual replacement value of the building did not exceed $611,000, the insured would be paid the full replacement cost for any loss, up to the policy limits, provided the property was repaired or replaced after a loss.

10. As part of the premium charged to the Plaintiffs, $150 was allocated for an inspection fee.

11. In April 16, 2004, an inspection company hired by the Defendant insurer, or its agents, performed an in-depth inspection of the insured property.

12. Following that inspection, the inspection company issued a report, which is attached as exhibit A.

13. Among other items considered by the inspector was the total replacement cost of the building. (Exhibit A, "Summary Report"). The inspector utililized an estimating guide widely used in the insurance industry.

14. According to the report sent to the Defendant or its agents in April 2004, the full replacement value of the building was $474,000.

15. This report was not provided to Plaintiffs. Defendant never offered to reduce the policy limit or refund part of the premium paid. Nor were Plaintiffs made aware of the lower replacement value determined by the Defendant's inspector.

16. On August 3, 2004, the insured property was severely damaged by fire.

17. The Plaintiffs reported the loss, and complied with all the terms and conditions of the policy.

18. Adjusters working on the behalf of the Defendant insurer claimed that the replacement value of the building was $748,649 and that the property should have been insured to a limit of $736,784.10. On this basis, the Defendant insurer determined that the building was not insured to 90% of its value. See, Statement of Loss, Exhibit B. Accordingly, although the cost to repair the damage was within the policy limits of $550,000, the Defendant insurer imposed a co-insurance penalty of $92,987.15 and only paid the Plaintiffs a total of $416,474.79.

19. As a consequence of not receiving an amount sufficient to repair the two-story structure that existed prior to the fire, the Plaintiffs were forced, instead, to reconstruct the property with only one story. They lost the benefit of rental units on the second floor and suffered a loss of net income of $280,000.

20. If, prior to the fire, Plaintiffs had ever been advised of the need to actually increase the policy limit of coverage and pay an additional premium, they would have done so.

**COUNT I**
**Breach of Contract**

21. Plaintiffs incorporate herein as if set forth in full their allegations set forth above in Paragraph nos. 1 through 20.

22. Defendant insurance company, acting through its agents, breached its contract of insurance with the Plaintiffs.

23. As a consequence of such breach, Plaintiffs suffered damages in excess of $370,000.

## COUNT II
### Negligence

24. Plaintiffs incorporate herein as if set forth in full their allegations set forth above in Paragraph nos. 1 through 23.

25. Defendant insurer owed a duty to Plaintiffs to adjust their loss fairly and reasonably.

26. Defendant insurer breached that duty. As a consequence, Plaintiffs suffered damages in excess of $370,000.

## COUNT III
### Violation of c. 93A § 11

27. Plaintiffs incorporate herein as if set forth in full their allegations set forth above in Paragraph nos. 1 through 25.

28. Defendant insurer acted unfairly and deceptively in the manner in which it adjusted the Plaintiffs' insurance loss.

29. As a consequence of Defendant's actions, Plaintiffs suffered a loss of money and property.

30. Plaintiffs, through counsel, made demand on Defendant, through its agent, for relief. A copy of said demand is attached as Exhibit C. Defendant's response is attached as exhibit D.

31. Defendant has refused to tender any reasonable settlement.

32. Defendant's unfair and deceptive acts were willful.

WHEREFORE, Plaintiffs request that they be awarded actual damages, together with attorneys' fees and costs, and that such actual damages be trebled due to the willful nature of Defendant's conduct.

## JURY DEMAND

Plaintiff demands a trial by jury.

PLAINTIFFS, PAUL MARTIN AND
JOANN MARTIN

By: _____
Paul S. Weinberg, Esq., BBO No. 519550
John E. Garber, Esq., BBO No. 635313
Weinberg & Garber, P.C.
71 King Street
Northampton, MA 01060
(413) 582-6886
fax (413) 582-6881

0502041011.doc

EXHIBIT A

**RRI** REGIONAL REPORTING INCORPORATED

| | | | |
|---|---|---|---|
| *Insured:* | Maple Leaf Inn, Inc. | *RRI Loc. #:* | 10630647 |
| | | *Survey Date:* | April 16th 2004 |
| *Address:* | 11 Arnold Street | *Surveyed by:* | William B. Hamby |
| *City/State/Zip:* | Westfield, MA 01085 | *Interviewed:* | Paul Martin |
| *RRI Client:* | WKFC81 | *Policy #:* | FC1 001 6136 |
| *Agency* | RCA Insurance Agency of NE Inc | *Requested by:* | Cira DeVito |

## WKF&C PROPERTY NARRATIVE

By a pre-arranged appointment we met with Mr. Paul Martin, president of the Maple Leaf Inn, Inc. and received full cooperation from the contact. There is only one building on site and this was open and inspected from basement to upper level and rooms. Our inspection was not restricted in any way by the insured.

### OPERATIONS/OCCUPANCY

Maple Leaf Inn. Inc. began operations 16 years ago and has operated at this location ever since under the ownership of Maple Leaf Inn, Inc., with Mr. Martin as president and general manager. The owner is active in the daily operations.

The insured is open from 11:00 a.m. and closes at 2:00 a.m., 6 days a week, and opens Sunday at Noon until 2:00 a.m. The firm has 6 full time and 14 part time employees. Gross income last year was $400,000.
The firm serves meals to seated restaurant patrons, and has full service bar. Total seating is for 70 persons. There is no live entertainment on premises and no dancing allowed. There is a pool table in the back room.

In addition to the bar/restaurant operations, the insured has 8 rooms available for rent on a weekly basis, and these are at full capacity.

The basement is used for storage of food items, in cans. Also, there is a cooler and freezer in the basement and stocks of whiskey and wines in cases. The insured also stores cartons in the basement and are removed daily.

Grade level is the restaurant and bar, with steps to the basement areas. The second level has 8 rooms that are rented on a weekly basis. Exterior steps are to the upper level only.

### UNDERWRITER'S SPECIFIC QUESTIONS

None noted.

Our survey of your operations is for underwriting purposes and to assist you in your loss control activities. However, no responsibility is assumed for the discovery and elimination of hazards which could possibly cause accidents or damage at any facility that is inspected. Compliance with any submitted recommendations in no way guarantees the fulfillment of your obligations as may be required by only local, state, or federal laws.

*Insured:*  Maple Leaf Inn, Inc.                    *RRI Loc. #:*  10630647
*Address:*  11 Arnold Street, Westfield, MA          *Survey Date:*  April 16, 2004

## NEIGHBORHOOD & EXPOSURES

The area is downtown Westfield, MA in the older part of the city. The area is stable and low crime and is about 1 block from the police station. The front is open roadway, but narrow and about 30' to the buildings across the street. The rear is open parking for the insured and the next door bank. The right side is narrow alley and 20' to a two story commercial building.

## LOSS INFORMATION

The insured reports no losses.

## PROPERTY

### Construction

The roof is pitched and wood decked at front, with the rear being slightly pitched, with a 12' wide section over the original building that is flat. (See diagram and photos). The lower story is brick exterior and is original. The second floor addition (date not known) is wood frame. All floors are wood and all interiors are drywall. Inasmuch as the only brick or masonry walls are the exterior lower level and all else is wood, this is considered as ISO 1 frame.

The building age is estimated by the insured at 80 to 100 years old. Maintenance is average, with some deterioration at rear upper level decks and windows. The square footage is 5,500 square feet, with upper level being smaller than ground floor.

The basement has concrete floor.

### Common Hazards

Wiring is in Romex and some conduit through circuit breakers with update in 1990. Plumbing is in copper and no known update, but there are no visible problems. Heating is by oil furnace located in the basement and is central hot water for all areas. There is central cooling for the restaurant bar area only. There is no air conditioning for the upstairs rooms.

### Special Hazards

Commercial cooking is considered as a special hazard. See attached form.

### Protection

The location is in an NB 3 area of Westfield, with a paid station within two blocks. There are hydrants within 500' of the front of the restaurant in either direction.

The building is not sprinklered and the insured has only a local fire alarm system that is not connected to a central location.



*Insured:*  Maple Leaf Inn, Inc.          *RRI Loc. #:*    10630647
*Address:*   11 Arnold Street, Westfield, MA    *Survey Date:*   April 16, 2004

The building contains ABC units of 5 lb capacity and under current contract for annual inspection. These are in the common area of the restaurant and bar, and in hallway in the upper level. Smoke alarms are hardwire and well placed.

## BUSINESS INTERRUPTION

A major loss would require over 90 days to rebuild or relocate. This includes both bar/restaurant operations and the rental units.

Regional Reporting, Inc.

# PROPERTY

| | |
|---|---|
| Insured: Maple Leaf Inn. Inc | Carrier/Broker: R.C.A Insurance Agency |
| Address: 11 Arnold Street | Policy #: FCI001 6136 |
| City/State/Zip: Westfield MA 01085 | Surveyed By: William B.Hanoy |
| Interviewed/Title: Plaul Marin | Survey Date: April 16th 2004 |

## OPERATIONS & OCCUPANCY

Account is a : ☒ Corporation    ☐ Partnership    ☐ Sole Proprietor    ☐ Other: _____
Account is: ☐ Building Owner    ☐ Tenant    Business Hours/Days: 11am to 2 am 6 days. Sunda 1 pm to 2AM
Years account owned the building: 16    Years at this location: 16

☐ Retail _____ %    ☐ Office _____ %    ☐ Warehousing _____ %    ☐ Manufacturing _____ %
☐ Residential 40%    # of Apartments: 8 rms    ☐ Hotel / Motel _____ %    # of Rooms Units _____
☒ Other: restaurant 60 %    Percentage of building that is vacant _____ %

## CONSTRUCTION

☐ Fire Resistive (6): _____ %    ☐ Modified Fire Resistive (5): _____ %    ☐ Masonry Non-comb (4): _____ %
☐ Non-Comb (3): _____ %    ☐ Joisted Masonry (2): _____ %    _____ % Othr.
Approx. Age of Building: 90 yrs    Number of Stories: 2    Basement ☒ Yes ☐ No
SQ. ft (omit basement) 3500    Basement Sq. ft. 800

| | | | |
|---|---|---|---|
| Type of roof: pitched | | Floors: wood | |
| Roof Construction: wood | | Ceilings: drywall | |
| Exterior walls: brick and frame | | Interior stairs: wood | |
| Interior walls: drywall | | | |

## COMMON HAZARDS

Heating: ☐ None    ☒ Central    ☐ Individual    Unit is: ☐ Enclosed    ☒ Not enclosed
Date of last upgrade: 1998    Condition: ☐ Adequate    ☐ Poor
Air Conditioning: ☐ Central    ☒ Individual    ☐ None
Wiring: Date of last upgrade: 1990    Condition: ☒ Adequate    ☐ Poor
Fusing: Date of last upgrade: 1990    Condition: ☒ Adequate    ☐ Poor
Plumbing: Date of last upgrade: as needed    Condition: ☒ Adequate    ☐ Poor

## PROTECTION

Fire Extinguishers # & Type: ABC    ☐ NO Fire Extinguishers on the premises.
Sprinkler System: ☒ None    ☐ Yes % of premises:    Alarm Type: ☒ Local    ☐ Central    ☐ Remote
Type: ☐ Wet    ☐ Dry    ☐ Other:    Water Supply: ☐ Public    ☐ Private
Control Valve: ☐ Locked open    ☐ Supervised    Tests:    ☐ Inspector    ☐ Drain    ☐ Trip    ☐ Other:
Detectors: ☒ Hardwired    ☐ Battery    ☐ None    Alarm Type: ☐ Local    ☐ Central    ☐ Remote
Manual Pull Stations: ☐ Yes    ☒ No    Standpipe & Hose: ☐ Yes    ☒ No
Site's Town Classification: 3    Any Hydrants within 500 Feet of Property: ☐ Yes    ☐ No
Fire Department: ☒ paid    ☐ volunteer    ☐ Combination    Distance: 2 blks miles

## EXPOSURES

Neighborhood is: ☒ Commercial    ☒ Urban    ☒ Improving    Comments (if any):
☐ Residential    ☐ Suburban    ☒ Stable
☐ Industrial    ☐ Rural    ☐ Deteriorating

Property Survey... [illegible fine print]

|  | Distance | # Stories | Construction | A/S | | Occupancy |
|---|---|---|---|---|---|---|
| Front: | 40 | 2 | Joisted Masonry | No | Retail | |
| Rear: | Open | | | | | |
| Left: | Parking | | | | | |
| Right: | 20' | 2 | Joisted Masonry | No | Retail | |



12/29/04  08:54 FAX                                                                 ☒007

Case 3:05-cv-30057-KPN    Document 1-2    Filed 02/28/2005    Page 7 of 20.

Regional Reporting, Inc

# ALL RISK ADDENDUM

Account:  Maple Leaf Inn. Inc.                     Location ID #:    10630647

## BURGLARY & THEFT

| | YES | NO |
|---|---|---|
| Is this a high crime area? | ☐ | ☒ |
| Is this a remote area? | ☐ | ☒ |
| Is there any yard storage | ☒ | ☐ |
| Is the exterior lighting adequate? | ☒ | ☐ |
| Is the fencing adequate? | ☒ | ☐ |
| Is there a parking facilities? | ☒ | ☐ |
| Are there frequent police patrols? | ☐ | ☒ |
| Burglar alarm systems on premises? | ☐ | ☒ |
| All openings (ex-skylights) protected? | ☐ | ☒ |
| Is there a Watchman Service | ☐ | ☒ |
| Doors & Locks are adequate? | ☒ | ☐ |
| Are high-target goods stocked? | ☐ | ☒ |
| Average cash on the premises? | Not known | |
| How often is inventory taken? | | |
| Any past burglary &/or theft losses? | ☐ | ☒ |

## COLLAPSE

| | YES | NO |
|---|---|---|
| Is the structure in good condition? | ☒ | ☐ |
| Is the floor loading within design limits? | ☒ | ☐ |
| Does the soil type contribute to collapse potenti l? | ☐ | ☒ |
| Is there a vibration exposure? | ☐ | ☒ |
| Is there roof snow & ice loading potential? | ☐ | ☒ |
| Is the roof equipment loading within design limits? | ☒ | ☐ |
| Are there any nearby excavations? | ☐ | ☒ |
| Is the structure built on a hillside? | ☐ | ☒ |
| Are there any retaining walls on the property? | ☐ | ☒ |

## WATER DAMAGE

| | YES | NO |
|---|---|---|
| Has plumbing been updated? | ☒ | ☐ |
| Plumbing in good condition? | ☒ | ☐ |
| Are there water storage tanks present? | ☐ | ☒ |
| Are there skylights present? | ☐ | ☒ |
| Are windows in good condition? | ☒ | ☐ |
| Any roof leakage evident? | ☐ | ☒ |
| Is a large volume of water used in the process? | ☐ | ☒ |

| | YES | NO |
|---|---|---|
| Any sewer back-up history? | ☐ | ☒ |
| Are floor drains present? | ☐ | ☒ |
| Are contents susceptible to water damage? | ☐ | ☒ |
| Any salvage potential of stock/equipment? | ☒ | ☐ |
| Are all contents stored 4" off floor? | ☐ | ☒ |
| Is there any basement storage? | ☒ | ☐ |

## SPRINKLER LEAKAGE ☒ Not Applicable

| | | | YES | NO |
|---|---|---|---|---|
| What type of sprinkler system is on the premises? | ☐ Wet | ☐ Dry | | |
| Is the sprinkler system on a maintenance contract? | | | ☐ | ☐ |
| Is the sprinkler system susceptible to freezing? | | | ☐ | ☐ |
| Is the sprinkler system susceptible to damage? | | | ☐ | ☐ |
| Is mechanical material handling equipment used? | | | ☐ | ☐ |
| Are employees trained to turn-off automatic sprinkler controls? | | | ☐ | ☐ |
| Age of sprinkler: ____ yrs   Piping: ____   Heads: ____   Valves ____ | | | | |

## WINDSTORM

| | YES | NO |
|---|---|---|
| Is there a history of high winds in the area? | ☐ | ☒ |
| Check the box if any of the following conditions that exist: | ☐ | ☒ |

| | | |
|---|---|---|
| ☐ Unanchored Roof | ☐ Storage of goods outdoors | Comments (if any): |
| ☐ Light Weight Roofing | ☒ Extensive Glass exposure | |
| ☐ Smokestacks | ☐ Large Overhanging Eaves | |
| ☐ Signs | ☐ Large adjacent trees | |
| ☐ Open Sides on the Building | ☐ Exposures from adjacent buildings | |

Regi nal Reporting. Inc

## EXPLOSION

|  | YES | NO |
|---|---|---|
| Is there an Explosion exposure from non-owned vessels? | ☐ | ☒ |
| Is there a Tenant/Neighbor process with explosion potential? | ☐ | ☒ |
| Are there Municipal steam pipes in or adjacent to the structure? | ☐ | ☒ |
| Are explosives &/or chemicals used &/or stored on the premises? | ☐ | ☒ |
| Is there a refueling area on the premises? | ☐ | ☒ |

## HAIL

|  | YES | NO |
|---|---|---|
| Is there a history of hail in the area? | ☐ | ☒ |
| Is structure susceptible to hail damage? | ☐ | ☒ |
| Are any damageable products stored in the open? | ☐ | ☒ |
| Are there any aluminum or lightweight awnings on the structure? | ☐ | ☒ |
| Are there any skylights or is there excessive window exposure? | ☐ | ☒ |
| Are there any signs or decorations on the structure? | ☐ | ☒ |

## LIGHTNING

|  | YES | NO |
|---|---|---|
| Is the structure higher than the surrounding structures? | ☐ | ☒ |
| Are there any stacks, radio towers, chimneys, etc.? | ☒ | ☐ |
| Is there a past history of lightning strikes? | ☐ | ☒ |
| Could the contents contribute to a loss if lightning strikes (i.e., explosives)? | ☐ | ☒ |
| Is the structure properly grounded? | ☒ | ☐ |

Risk to Structure:   ☒ Light   ☐ Moderate   ☐ Severe

Location:   ☒ Flat   ☐ Hilltop
            ☐ Hillside   ☐ Mount in Top

## SMOKE

|  | YES | NO |
|---|---|---|
| Are the contents susceptible to smoke damage? | ☐ | ☒ |
| Is smoke venting provided? | ☐ | ☒ |
| Is there an exposure to sudden, unusual & faulty operation of any heating or cooking unit on the premises? | ☐ | ☒ |

## AIRCRAFT/VEHICLE

|  | YES | NO |
|---|---|---|
| Is there an airport in the vicinity? | ☐ | ☒ |
| Is the structure in the airport flight path? | ☐ | ☒ |
| Is there a heavy vehicle traffic exposure? | ☐ | ☒ |

## RIOT/CIVIL COMMOTION

|  | YES | NO |
|---|---|---|
| Is there a history of riot or civil commotion? | ☐ | ☒ |
| Is there any present labor unrest in the area? | ☐ | ☒ |

## V & MM

|  | YES | NO |
|---|---|---|
| Is there a history of V & MM in the area? | ☐ | ☒ |
| Is there evidence of V & MM activity in the area? | ☐ | ☒ |
| Are there any schools or playgrounds in the area? | ☐ | ☒ |
| And window displays on the premises? | ☐ | ☒ |

## ADDITIONAL COMMENTS (If any):

Regional Reporting, Inc

# COOKING ADDENDUM

Account:   Maple Leaf Inn. Inc.                                    Location ID #:   10630647

| **Fuel** |
|---|

☒ Gas        ☐ Electric        ☐ Propane        ☐ Other:

**Equipment:** Indicate those that apply and the number of each:

☒ Ranges:   2        ☐ Ovens:        ☒ Deep Fryers:   1        ☐ Other:
☐ Flat Grills:        ☒ Broilers:   1        ☐ Charcoal Broiler:        ☐ Other:

| | ☒ Yes | ☐ No |
|---|---|---|
| Are deep fryers controlled by 475°F high-limit thermostat? | ☒ Yes | ☐ No |
| Is the distance between other cooking surfaces and the deep fryer a minimum of 16 inches? | ☒ Yes | ☐ No |
| Are all combustible walls greater than 18 inches from the nearest cooking unit? | ☒ Yes | ☐ No |

**Vents, Hoods, & Ducts:** Provide the following information; note necessary details in the narrative:

| | | |
|---|---|---|
| Are all cooking units covered by hoods and vents? | ☒ Yes | ☐ No |
| Vents are protected by:  ☒ Filters (non-mesh type)   ☐ Grease Extractor System   ☐ Washing System | | ☐ None |
| If yes, how often is it cleaned?   Weekly        By whom?   Insured | | |
| Are hoods vented to the outside by ducts? | ☒ Yes | ☐ No |
| Do vents extend into or through roof space or other concealed areas? | ☐ Yes | ☒ No |
| Are hoods vented at least 18 inches from combustible material or otherwise suitably protected? | ☒ Yes | ☐ No |
| Are adequate clean-off openings provided? | ☒ Yes | ☐ No |
| Is grease build-up noted anywhere on the exhaust system? | ☐ Yes | ☒ No |
| Is there a contract with a commercial firm to clean and service the exhaust system? | ☒ Yes | ☐ No |
| Does the cleaning schedule appear adequate? | ☒ Yes | ☐ No |
| Are wiring and lighting protected from grease build-up? | ☒ Yes | ☐ No |
| How often is the hood and duct system cleaned?   Semi-Annually        Date of last service:   December 2004 | | |
| By Whom:   Airways Cleaning Service | | |

**Protection:** Provide the following information; note necessary details in the narrative:

| | | |
|---|---|---|
| Is an automatic extinguishing system provided in the hood and duct? | ☒ Yes | ☐ No |
| Manufacturer:   Range Guard | | |
| What type of extinguishing agent is used?   Wet HDR 25 DC | | |
| Is the system U.L. 300 compliant? | ☒ Yes | ☐ No |
| Does the system cover all cooking surfaces? | ☒ Yes | ☐ No |
| Is automatic fuel shut-off provided? | ☒ Yes | ☐ No |
| Is an accessible means of manual activation of the extinguishing system provided? | ☐ Yes | ☒ No |
| Are separate temperature high-limit controls provided on the deep fat fryers? | ☒ Yes | ☐ No |
| Are proper portable fire extinguishers provided in the kitchen? | ☒ Yes | ☐ No |
| Is a maintenance contract maintained on the extinguishing system? | ☒ Yes | ☐ No |
| How often is the extinguishing system serviced?   6 months        Date:   December 2004 | | |
| By Whom:   Mass Fire Tech | | |

**Additional Comments (if any):**

4 27 2004                      **Summary Report**                        Page:  1

| Estimate Number | : | .0 |
| Policy Number | : | FCI 001 6136 |
| Property Owner | : | Maple Leaf Inn, Inc. |
| Property Address | : | 11 Arnold Street |
| Property City | : | Westfield |
| State Province | : | MA |
| ZIP Postal Code | : | 01085 |

## Section 1

| Occupancy | Class | Height | Rank |
|---|---|---|---|
| 60% Restaurant, | Joisted Masonry | 10.00 | 2.0 |
| 40% Multiple Res (Low Rise) | Frame/Combustible | 9.00 | 2.0 |
| Total Area | : 5,500 | | |
| Number of Stories (Section) | : 2.00 | | |
| Shape | : 2.00 | | |

| Components | Units/% | Other |
|---|---|---|
| HVAC (Heating): | | |
| Hot Water | 100% | |

| Basement | Type | Area | Depth | Rank |
|---|---|---|---|---|
| Restaurant | Semifinished | 800 | 8.00 | |
| | | | | 2.0 |
| Number of Levels | : 1.00 | | | |
| Shape | : 1.00 | | | |

| Basement Components | Units/% | Other |
|---|---|---|
| HVAC (Heating): | | |
| No HVAC | | |

Cost as of    04/2004

| | Units/% | Cost | Total |
|---|---|---|---|
| Basic Structure | | | |
| Base Cost | 5,500 | 58.90 | 323,950 |
| Exterior Walls | 5,500 | 11.91 | 65,505 |
| Heating & Cooling | 5,500 | 8.88 | 48,840 |
| Basic Structure Cost | 5,500 | 79.69 | 438,295 |
| | | | |
| Basement | | | |
| Semifinished Basement | 800 | 45.06 | 36,048 |
| Building Cost New | 5,500 | 86.24 | 474,343 |



**RRI** REGIONAL
REPORTING
INCORPORATED

Insured: MAPLE LEAF INN INC.

Location: 11 ARNOLD ST
WESTFIELD MASS 01085

Company: RCA INSURANCE AGENCY of NE

Policy No. FCI 001 6136

10630647

SCALE: 1" = _____ feet ► INCLUDE: Arrow indicating "North" direction; construction;
dimensions and height of insured's building; construction, occupancy, height, distance to
adjacent exposures; streets/roads; location and distance to hydrants; firewalls (wall thickness
and height of parapet); and other pertinent data (fuel storage tanks, gasoline pumps, etc.)

SQUARE FOOTAGE:
☐ BUILDING  ☐ PREMISES



MAPLE LEAF INN, INC.
POLICY FCI 001 6136

JM EXP     EXP

STAIRS    DECK
          FLat roof
          RENTED ROOMS

PARKING   Pitched
          RESTAURANT BAR
          LOWER LEVEL

A R O N A L D   S T

5500 square feet

NORTH

SIDE VIEW

EXPOSURES
FRONT                    RIGHT



Photo Supplement



omments
FRONT



Comments
REAR



# EXHIBIT B

CO-INSURANCE
REPLACEMENT COST COVERAGE CALCULATION

$ 550,000.00      X      $506,190.24      = $413,203.09
$ 673,784.10 ( 90%  X $748,649.00)

CO-INSURANCE
ACTUAL CASH VALUE CALCULATION

| | |
|---|---|
| REPLACEMENT COST OF BUILDING | $748,649.00 |
| DEPRECIATION | (257,944.00) |
| ACTUAL CASH VALUE | $490,705.00 |
| | X .90 |
| | $441,634.50 |
| INSURANCE | $550,000.00 |

NO CO-INSURANCE PENALTY - ACV

**BUILDING CLAIM BASED ON ACV RECOVERY - $416,474.79**

| | |
|---|---|
| Recoverable Loss – ACV | $416,474.79 |
| Deductible | (2,500.00) |
| Net | $413,974.79 |

PELLETIER & ROURKE, INC.

*Jeffrey R Hamel*

Jeffrey R. Hamel, Adjuster

EXHIBIT C

WEINBERG & GARBER, P.C.

ATTORNEYS AT LAW

71 KING STREET

NORTHAMPTON, MA 01060

WWW.W-G-LAW.COM

PAUL S. WEINBERG
JOHN E. GARBER

STEWART EISENBERG,
OF COUNSEL

TELEPHONE
(413) 582-6886
FACSIMILE
(413) 582-688·

January 5, 2005

<u>Via First Class Mail</u>

Mr. Palmer App, First Vice President
U.S. Adjustment Corp.
P.O. Box 111
Washington, NJ 07882

RE:  Insured: Paul and Joann Martin and Maple Leaf Inn
     Claim no.: 44330MA
     Policy no.: FCI 001-6136
     Date of loss: August 3, 2004

Dear Mr. App:

As directed by Jeff Hamel, I am writing to outline my position on behalf of my clients, the insureds. I am only addressing the building coverages, since I don't have documentation concerning the status of payments on contents, business income, etc.

In a nutshell, my position is that the application of a co-insurance penalty was inappropriate under the circumstances and must be rescinded.

The insureds placed their policy with Indian Harbor, effective April 1, 2004. At the behest of their agent, they increased their prior coverage to $550,000 on a 90% co-insurance, replacement-cost basis. Included in the premium was a $150 inspection charge.

On April 16, William Hanby, of RRI, conducted a full and complete inspection of the premises on behalf of Indian Harbor's broker, WKF&C. As a result of that inspection, using a Marshall and Swift guide, the inspector determined that the replacement cost of the building was $474,343. This was forwarded to the appropriate underwriters and establishes that, as far as underwriting knew, the building was significantly *over-insured*. As you may know, over-insurance is specifically prohibited by statute in Massachusetts and constitutes a *per se* violation of General Laws chapters 93A and 176D, §3 [including, but not limited to subsections 9(a) and (h)(12). At minimum, such a violation would entitle the insured to a refund of the premium difference, with interest, and attorneys' fees.

Of greater significance, however, is the application of the co-insurance penalty. It appears that your adjuster proceeded without benefit of the underwriting file. Not only would a review of the file have disclosed the replacement cost estimate by the

0501051421.DOC

● Page 2

January 5, 2005

inspector, but it may also have disclosed the "Statement of Values on file with the Company..." referred to in Endorsement No. 1. That endorsement provides that the Company's liability will be the lesser of: a) the actual adjusted amount of loss...; b) the total stated value for the Property...; or c) the limit of liability.

I do not have the Statement of Values on hand and would appreciate a copy of it.

Regardless, your adjuster determined that the total replacement cost of the building was approximately $750,000. I am further advised that the repair cost of the building was approximately $506,000, inclusive of board-up and cleaning and dehumidification. (This apparently does not include code upgrade and mold remediation).

My clients are entitled to payment of the full cost of repairs and are thus owed the difference between the repair costs and the depreciated cost of repairs. I understand that they have already been paid $413,974.79, based on an ACV calculation.

Accordingly, my clients are owed $89,715.45, which reflects the replacement cost minus the actual cash value payment of $416,000 after taking the $2500 deductible into consideration.

Very truly yours,

Paul Weinberg

/lmj

cc:    Mr. Paul Martin
       Mr. Jeff Hamel

EXHIBIT D

# U. S. Adjustment Corp.
*Adjusters for the Companies*

Please reply to:
PO Box 111
Washington, NJ 07882
(908) 835-8222
Fax (908) 835-1505
MApp@usadjustment.com

January 27, 2005

**Mr. Paul Weinberg, Esq. via email at: pweinberg@w-g-law.com**
**Weinberg & Garber P.C.**
**Attorneys at Law**
**71 King Street**
**N. Hampton, MA 01060**

|  | *RE:* | *Our File #* | 44330MA |
|--|-------|--------------|---------|
|  |  | *Insured* | Maple Leaf Inn, Inc. |
|  |  |  | 11 Arnold Street |
|  |  |  | Westfield, MA 01085 |
|  |  | *Policy #* | FCI 001 6136 |
|  |  | *Loss/location* | 11 Arnold Street |
|  |  |  | Westfield, MA 01085 |
|  |  | *Date/Loss* | Tuesday, August 03, 2004 |
|  |  | *Type/Loss* | Fire |

Dear Mr. Weinberg:

In reviewing your letter of January 5, 2005, it appears that you are making an assumption that a building inspector, whose primary job is to determine insurability so far as construction, maintenance and other underwriting matters, is also charged with establishing the amount of insurance carried by our insured.

First of all, the building inspector merely plugs certain data into a general building evaluator to come up with an estimate of the building's Replacement Cost Value. No action was taken by the underwriter to alter the amount of insurance requested by the insured.

As I am sure that you are aware, the validity of the amount of insurance requested by the named insured must be tested on, and concurrently, with the date of loss of any occurrence. A more in-depth analysis of the value at risk was performed by our local claim representative to reflect the Replacement Cost Values at risk on the date of loss. This did result in either a coinsurance penalty or the insured electing to take the Actual Cash Value settlement to which he was entitled.

The underwriters do not have, normally, sufficient knowledge to raise an issue with an insured and tell them that they are acquiring too much, just enough or too little insurance. If the underwriters take that step of affirmatively advising the insured



40 Fulton Street
New York, N.Y. 10038
(212) 267-5100
Fax (212) 608-4651



Our File #: 44330MA
**Maple Leaf Inn, Inc.**

<u>1/26/2005</u>
Page 2

that he is either carrying too much or not enough insurance, we would fully agree with you that, in all likelihood, if the insured were to alter the amount of insurance based on that recommendation, the policy would become basically an agreed amount.

This was not the case with the Maple Leaf Inn in that the amount of insurance requested by the named insured on the application was accepted as the limit of liability with the protection of the coinsurance clause. As I am sure you are aware, that is really the true purpose of a coinsurance clause; to accept that amount of insurance requested by the named insured and to protect the insurance carrier against someone who decides, for whatever reason, not to carry sufficient insurance to meet that requirement.

Even if the insured had met the coinsurance requirement and a settlement was based on Replacement Cost Values, the insured would also have to establish that he had physically spent more funds returning the building to similar use with like, kind and quality, and that they had expended funds in excess of the Actual Cash Value allotment.

In any event, we do not feel that there was any proactive effort made by the underwriters to take a generalized Replacement Value "guesstimate" and alter the coverage requested by the named insured. Therefore, we must advise you that our calculations of compliance with the terms and conditions of the policy contract is proper and, at this point, will remain as established.

You had requested a Statement of Values; I believe you are referencing a Statement of Loss, which we are attaching.

Sincerely yours,

**Palmer App Jr., First Vice President, RPA**
mapp@usadjustment.com
**U.S. ADJUSTMENT CORPORATION**
**PA/rm**

Enclosure

cc  WKF&C Agency, Inc.
    Indian Harbor Insurance Company
    Pelletier & Rourke, Attn: Jeff Hamel via email at: jrhamel@pelletierrourke.com.

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Paul Martin and Joann Martin

## DEFENDANTS

Indian Harbor Insurance Company

(b) County of Residence of First Listed Plaintiff  Hampshire
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Fairfield
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

05 - 30057 - MAP

(c) Attorney's (Firm Name, Address, and Telephone Number)
Paul S. Weinberg and John E. Garber
Weinberg + Garber, P.C. 71 King Street Northampton,
MA 01060   (413) 582-6886

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                      and One Box for Defendant)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability   ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander   ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability   Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine   **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product   ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability   ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability   ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury   Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting   & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence   Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc.   Security Act | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights   ☐ 555 Prison Condition | | | |

## V. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of Contract of Defendant Insurer with respect to payment of a claim involving a fire loss.
(28 USC §1332)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 370,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE  2/28/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)  Martin v. Indian Harbor Insurance Company

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

   ☐  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   ☒  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ☐  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ☐  V.    150, 152, 153.

   05 - 30057 - MAP

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐    NO ☒

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

    YES ☐    NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐    NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐    NO ☒

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☒    NO ☐

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☐        Central Division ☐        Western Division ☒

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☐        Central Division ☐        Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

    YES ☐    NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Paul Weinberg, Esq.
ADDRESS  Weinberg + Garber, P.C. 71 King Street  Northampton, MA 01060
TELEPHONE NO.  (413) 582-6886

(Coversheetlocal.wpd - 10/17/02)